UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHRISTIAN WEBB,<br><br>　　　　　　　Petitioner,<br>　v.<br>ROBERT LEGORNDE, et al.,<br><br>　　　　　　　Respondents. | Case No. 3:12-cv-00427-MMD-VPC<br><br>ORDER |

This is a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by a Nevada state prisoner (dkt. no. 4). Respondents have answered the petition's single ground (dkt. no. 11).

**I.    PROCEDURAL HISTORY AND BACKGROUND**

On July 13, 2010, a jury convicted petitioner Christian Webb ("petitioner" or "Webb") of count 1: conspiracy to commit robbery; count 2: robbery with use of a deadly weapon; count 3: grand larceny of an automobile; and count 4: grand larceny (exhibits to answer, dkt. no. 11, Exh 40).[1] The state district court sentenced petitioner as follows — count 1: 96 to 240 months under the small habitual criminal statute; count 2: 96 to 240 months under the large habitual criminal statute plus a consecutive term of 12 to 48 months for the deadly weapon enhancement, concurrent with count 1; count 4: 24 to 60 months, concurrent with count 2. Count 3 was dismissed. (Exh. 41.) The state district court filed the judgment of conviction on July 20, 2010. (Exh. 42.)

---

[1] All exhibits referenced in this order are exhibits to respondents' answer, dkt. no. 11, and are found at dkt. nos. 12-15.

Petitioner appealed; on May 10, 2011, the Nevada Supreme Court affirmed the convictions, and remittitur issued on June 7, 2011. (Exhs. 63, 65.)

Petitioner filed a state postconviction petition for writ of habeas corpus on August 10, 2011, which the state district court denied on November 23, 2011. (Exhs. 70, 83.) The Nevada Supreme Court affirmed the denial of the petition on July 25, 2012, and remittitur issued on August 21, 2012. (Exhs. 93, 97.)

Petitioner dispatched his federal habeas petition on August 10, 2012. (Dkt. no. 4.) Petitioner asserts a single ground for relief: that insufficient evidence supported his convictions of count 2, grand larceny, and count 4, robbery. (*Id.* at 11.) Respondents now answer the petition. (Dkt. no. 11.)

## II. LEGAL STANDARD UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770,

786 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. INSTANT PETITION

Petitioner alleges that the State failed to present sufficient evidence of his participation in the grand larceny and robbery to support his conviction in violation of his Fourteenth Amendment due process rights. (Dkt. no. 4 at 10-20.) Petitioner argues that the evidence only established that he may have been at the scene but not that he participated in the robbery and grand larceny. (*Id.* at 17.)

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. On habeas review, this Court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id.* at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

NRS § 200.380 defines robbery in Nevada as follows:

> 1. Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:
>
> (a) Obtain or retain possession of the property;
> (b) Prevent or overcome resistance to the taking; or
> (c) Facilitate escape.
>
> The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property. A taking constitutes robbery whenever it appears that, although the taking was fully completed with the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

4

The version of NRS § 205.220 in effect in July 2009 provided in pertinent part:

 a person commits grand larceny if the person:

1. Intentionally steals, takes and carries away, leads away or drives away:

(a) Personal goods or property with a value of $250 or more, owned by another person. . . .

In reviewing these claims, the Nevada Supreme Court affirmed petitioner's conviction, reasoning:

> Appellant Christian Anderson Webb contends that insufficient evidence was adduced to support the jury's verdict. Webb claims that the evidence only established that he might have been present at the crime scene but not that he participated. We disagree because the evidence, when viewed in the light most favorable to the State, is sufficient to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008). Julio Montes testified at trial that he pleaded guilty to conspiring with Webb to rob the victim. Montes, however, also repudiated his prior statements implicating Webb in the crime and claimed that he did not know the black male he was with when the two of them robbed the victim or the individual standing trial. Montes stated that the black male threatened the victim with a knife and later sold the speakers taken from the victim's vehicle. Detective Edwing Melgarejo testified that during an interview with Montes, he showed him a photograph of Webb and Montes admitted to committing the crime with him. Webb also informed Detective Melgarejo during his interview that he was present with Montes during the robbery and acknowledged running from the officers during a chase later that night. Although the victim never identified Webb as one of the perpetrators, he did testify that a black male threatened him with a knife and forced him to lay face down on the ground while the black male and Montes drove away in his vehicle. Webb's fingerprints were discovered on the victim's car.
>
> It is for the jury to determine the weight and credibility to give conflicting testimony, and a jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. See NRS 193.165(1); NRS 199.480(1); NRS 200.380(1); NRS 205.220(1)(a); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992); *Bolden v. State*, 97 Nev. 71, 73, 624 P .2d 20, 20 (1981). Additionally, circumstantial evidence alone may sustain a conviction. *See Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003); *Baker v. Sheriff*, 93 Nev. 11, 13, 558 P .2d 629, 629 (1977) ("[A]lthough mere presence cannot support an inference that one is a party to an offense, presence together with other circumstances may do so.").

(Exh. 63 at 1-2.)

Here, sufficient evidence supports petitioner's convictions. The victim testified that over the night of July 19-20, 2009, he and Julio Montes were drinking beers in the

1  parking lot outside his apartment in North Las Vegas, Nevada. (Exh. 36 at 103-105.)
2  Montes asked for a ride over to a friend's house; the victim at first refused, but then
3  agreed. The victim let Montes drive his 1999, white, four-door Nissan Altima because
4  the victim's driver's license had been suspended. They drove to an apartment complex;
5  Montes went into an apartment but returned and reported that his friend was not there.
6  Montes saw another man — the victim can only identify him as a black man — and went
7  and spoke with him. Montes insisted that they give the man a ride. The victim eventually
8  agreed, the man got into the back seat and Montes started driving. He abruptly drove
9  down a dead-end street in the apartment complex. The victim asked what was
10 happening, and Montes told him: "Shut up, motherfucker." The man in the back seat
11 placed his left arm around the victim's neck and held a knife to his throat with his right
12 hand. Montes got out of the car, opened the victim's door, and ordered him to get out of
13 the car and get on the ground. The third man got out of the car, placed his foot on the
14 victim's back and started going through his pockets. The man took the victim's wallet
15 and $11 in cash. Montes checked the victim's pockets too; Montes and the other man
16 got back into the victim's car and drove off. (Exh. 36, pp. 107-117.) The victim then
17 called the police; he gave a description of the vehicle and described the suspects as a
18 Hispanic male adult and a black male adult. (Exh. 37 at 3-9.) The victim knew Montes,
19 but he was not able to identify the other man. (Exh. 36 at 117.)

20   A North Las Vegas Police Department ("NLVPD") officer testified that he saw the
21 vehicle later that night. (Exh. 37 at 11.) He pursued the vehicle; when he followed it
22 around the corner he found the car empty, rolling slowly down the road with both
23 passenger side doors and the driver's door open. (*Id.* at 13.) A crime scene investigator
24 testified that he lifted fingerprints from the car and ultimately matched two to Webb from
25 their database. (*Id.* at 27-28.) A second investigator confirmed the match, per
26 department protocol. (*Id.* at 28.)

27   Julio Montes testified that he was subpoenaed by the State and was not
28 testifying of his own free will. (Exh. 37 at 36.) He testified that he pleaded guilty to

robbery and conspiracy to commit robbery in connection with these events. He acknowledged that when he entered the plea, he told the court that he conspired to commit robbery with Christian Webb. However, he testified at Webb's trial that he would have signed the plea agreement no matter who it listed as his coconspirator and that he did not, in fact, know Webb, nor did he conspire with Webb to rob the victim. (*Id.* at 56.) Instead, he testified that at the apartment complex he asked a black man if he knew the friend he had stopped over to see. The man told Montes that his friend was at a casino and asked for a ride. Montes testified that he had seen the man around but did not know him. Montes started driving with the victim in the passenger seat and the third man in the back seat. Montes stopped and opened his door to vomit, and then he saw that the third man had pulled a knife on the victim and had him on the ground. After the man robbed the victim, Montes got back into the car with the man and drove off. Though he was the driver, he does not really remember where they went because he was "blacking out." When the police pursued them, he turned down a street, stopped the car, and ran from the vehicle. (*Id.* at 36-51.) In response to the State's questioning, Montes opined that a snitch is not a good thing and "snitches get stitches." (*Id.* at 51.)

  A detective testified that another suspect was arrested but ultimately ruled out because, among other reasons, he was Hispanic not black. (Exh. 37 at 68-69.) He further testified that when he interviewed Montes, he showed him a photo of petitioner, and Montes admitted he was involved in a robbery with petitioner. The detective then interviewed petitioner, and when he showed him a photo of Montes, petitioner stated that he knew Montes from around the neighborhood but did not really hang out with him. Petitioner told the detective that he had been with Montes when the robbery happened, but that he was not involved. Petitioner told the detective that he was only looking for a ride and that Montes was the one who pulled the knife and robbed the victim. (*Id.* at 70-75.)

  Under cross examination by defense counsel, the detective testified that the other suspect who was first arrested for the robbery signed a confession. (Exh. 37 at

76-77.) The detective testified that the man was never charged and stated that he did not know the origin of the confession because the suspect only spoke Spanish but the confession was written in English. The suspect did not know key details about the incident, neither petitioner, Montes, nor the victim ever implicated a third person in the robbery, and the detective showed the victim a photo of that first suspect and the victim indicated that suspect was not the perpetrator. (Exh. 37 at 78-80.)

Petitioner points out that he has not admitted to the crimes, that the victim never identified him, and that another suspect was initially considered, who may have even confessed. However, Montes' testimony at the trial that he did not even know petitioner strains credibility. Petitioner admitted to knowing Montes and to being present during the robbery, and his fingerprints were found on the vehicle. Moreover, this Court must assume that the jury resolved any potential evidentiary conflicts in the State's favor. *Jackson*, 443 U.S. at 326. With the testimony recounted above, it cannot be said that no rational trier of fact could have found proof of petitioner's guilt beyond a reasonable doubt.

The Nevada Supreme Court reasonably applied *Jackson*. Accordingly, petitioner has failed to demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Therefore, the petition is denied.

## IV.     CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

## V. CONCLUSION

It is therefore ordered that the petition for a writ of habeas corpus (dkt. no. 4) is denied in its entirety.

It is further ordered that the Clerk shall enter judgment accordingly and close this case.

It is further ordered that petitioner is denied a certificate of appealability.

DATED THIS 3rd day of September 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE